And I would like to reserve five minutes of my time at the end for rebuttal. May it please the Court, this case concerns the proper construction of a provision of the Medicare statute commonly referred to as the Pickle Amendment that describes a fraction used to calculate whether a large urban hospital is entitled to a special enhancement of its Medicare reimbursement based upon its service to a disproportionate share of indigent patients. If the numerator of the fraction that is described in the statute exceeds at least 30 percent of the denominator, a hospital qualifies for this special adjustment. This case presents a question of what components make up the denominator of the fraction, and the answer to this question hinges on the meaning of the word such at the end of the statute. The statute is explicit that the numerator of the fraction is the hospital's net inpatient care revenues from which revenues attributable to Medicaid or Medicare have been excluded during a defined cost-reporting period for indigent care from state and local government sources. The denominator is described as the total of such net inpatient care revenues during the period. The government would construe the phrase total of such net inpatient care revenues to mean simply the hospital's total net inpatient care revenues, i.e., they interpret it to mean essentially what the statute would mean if the word such were removed entirely. And they argue that under the Chevron case, the Court must defer to their construction of the statute because there are multiple possible meanings of the word such, and therefore this renders the provision ambiguous. But this view cannot be squared with application of one of the cardinal principles of statutory construction, notably the canon that when possible, a court is to construe a statute to give every word and phrase not only meaning but operative effect. And with the word total, I think actually the government says at page 37 of their brief, total clarifies that there is some part of the numerator that is not ‑‑ I'm sorry, that there is some part of the numerator that is not in the denominator. Doesn't it suggest that you have to, in a sense, re-aggregate the net inpatient care revenues to include revenues attributable to Medicare or Medicaid? No, Your Honor. Now, it is conceivable that if those were the only words you were construing in the statute, that one could put that meaning on it. But in the statute as a whole, it's not just total of, it's total of such. One has to give effect to not only total of but also such. If you remove total of from the statute, what you end up is describing the denominator as 30% of its ‑‑ I'm sorry, 30% of such net inpatient care revenues. Now, that could create confusion and lead a reader to determine that the such net inpatient care revenues is the same as the ‑‑ is the entire batch of revenues that have been described in the numerator, and you would end up with an absurdity. What total of does is it clarifies, it makes it clear that this absurd construction is not possible and nobody is going to be confused. It does have an effect on the statute. And as I said, I think that the government admitted it at page 37 of its brief. It has a little parenthetical where it emphasizes total of and indicates that clearly communicates that there is some part of the numerator that is not in the denominator. How is this case different than the North Broward case decided by the D.C. Circuit? Your Honor, it's not different from the North Broward case. Our contention is that the North Broward decision was incorrect. There is ‑‑ it is the same statute and in many cases, in many respects, it's the same arguments being made. I will say that the North Broward court overlooked, I think, a number of things. It overlooked the argument that we've made that it's not just the word such, but it's also the word Medicare that is superfluous. If it was decided wrongly, why hasn't ‑‑ why hasn't Congress in the intervening years seen fit to correct the erroneous interpretation given by the D.C. Circuit to the Pickle Amendment? Your Honor, I don't know exactly the extent to which this particular case and this particular construction by the agency has been brought to the attention of Congress. The law is fairly clear, and indeed the Supreme Court has said it a number of times, that congressional inaction is to be given little weight in the interpretive process. I would cite for that Alexander v. Sandoval, which is at 532 U.S. 275, also Brecht v. Abramson at 508 U.S. 968, saying that a court should be reluctant to draw inferences from this kind of inaction by Congress. There are many other cases that I can ‑‑ could cite, and I won't bother to give you a string cite at this point. But the inaction of Congress is not something which is to be considered in this kind of statutory construction. I do think that it is important to look at the Supreme Court's very recent case, which was pointed out in a 28J letter by the government, however. Lanier is a case which does acknowledge that ‑‑ actually, I'm sorry, it's not Lanier, it's Lamy, and I'm not quite sure how to pronounce that. But ‑‑ Kennedy. I don't know either. Lamy, Lamy, it's somebody. It's one of the two. But, Your Honor, I think that case is highly instructive here. It does point out that the principle that we rely on here, the canon that no word is to be construed as surplusage, is not an absolute. And we don't claim that it's an absolute. Indeed, it is generally expressed that where possible, every word is to be given effect. What Lamy, however, says is that there are times, and it cites to the Chickasaw Nation case from the Supreme Court, which pretty much said the same thing. This principle can be offset, it can be overcome by another countervailing canon of construction or established judicial preference. In the Lamy case, the judicial preference that offset the principle against construing the word attorney as surplusage in that case was a judicial preference to interpret a statute to have a plain meaning and not to be ambiguous. You had two canons that pointed in a different direction. Here, Your Honor, those very canons point in the same direction. In this case, by applying the canon in favor of giving each word effect, you avoid ambiguity. It is by disregarding that canon that ambiguity is created. That's exactly the point of the government's brief. The government, by construing the word such to have a mere referential function, which, in fact, has no operative effect on the statute, creates ambiguity in the statute. So Lamy is very much supportive of this case, of the hospital's position in this case, because here you have both of those canons going in the same direction, and the direction it goes in is that the denominator such, net inpatient care revenues, does have the Medicare and Medicaid revenues excluded. Now, another point that I want to make about the Lamy case, because I think this really is a highly instructive case, the Lamy case also says very clearly that when you have a statute that's been amended, and in that case also there was an amendment to the statute, you look at the statute that is the language as it currently exists. You don't – I believe that that's at page 6 of the slip opinion in the Lamy case. And it is quite clear that in that case, which also involved an amended statute, that what the Court said was the proper thing to do was to look at the current language, not to go and look at the past and the legislative history. Indeed, I think in that case it suggests at page 4 of the slip opinion that this circuit had looked at the legislative history of the statute in Lamy and had decided that the legislative history pointed directly contrary to the interpretation that the Supreme Court ended up deciding was the right interpretation. And the basic rationale in Lamy was that the Court wanted to avoid the pitfalls of legislative history and therefore applied the judicial preference for avoiding ambiguity, therefore parsed the particular language and decided what that language meant. That is exactly what we want the Court to do here, and I would say that that is what the most recent guidance from the Supreme Court makes clear is the right thing to do. I've gotten a little bit ahead of myself, Your Honor, in the argument. I also feel I should address the legislative history point. The government, in order to try to offset our canon of statutory construction, which we do believe is controlling here, essentially instead of having another canon that they can propose to offset it, rather they're trying to use legislative history. And therefore, you can bootstrap in an interpretation of the prior statute and that's directly contrary to what the Supreme Court says you should be doing in the Lamy case, and that is how they support their contention that this is an ambiguous statute, so you should defer to the government's position. In fact, if you look at the legislative history of the case, and I do not propose that that is the way to settle this case, because we say the language is clear and you don't have to go to legislative history. But if you do go to legislative history, plainly, just as it is the language of this statute as it currently exists that you should be looking at, it is the legislative history of this language as enacted in 1987. Now, if one looks at the 1987 legislative history, it is absolutely crystal clear what that enacting Congress thought that this statute meant and what they intended it to mean. At page 545 of the conference report, it says that what this provision does is it clarifies that a hospital would qualify if more than 30 percent of its net inpatient care revenues, excluding any Medicare or Medicaid revenues, are provided by State and local government payments for indigent care. It defines that denominator as net inpatient care revenues excluding any Medicare or Medicaid revenues. That is the statement of the Congress that passed this language. Now, the North Broward Court, and again, I'm going back to why that is incorrect, characterized this somehow as subsequent legislative history. Actually, I think what the North Broward Court did was it sort of ignored this particular section and instead focused on a section of the conference report that was two pages earlier, in 543, where exactly the same, excuse me, Your Honors, the same description of the statute is given. However, it is where it says it's a technical amendment and it suggests that what the conference is saying is that this is how they interpreted the earlier law. There it says, under one criterion, that a hospital located in an urban area which has 100 or more beds may receive such payments if it can demonstrate that more than 30 percent of its inpatient care revenues, excluding any Medicare or Medicaid revenues, are provided by State and local government payments. Again, this is not subsequent legislative history. What this is, is it is a Congress that has amended the statute saying this is the statute from which we believe we are making technical changes. We are intending to enact language which makes no change, which is substantively the same as this. And therefore, I think it is a total mischaracterization of the legislative history, which is in the North Broward opinion to regard this as subsequent legislative history. But even if this were, that does not change the fact that two pages later, in describing what this language does, it's a flat-out statement. It clarifies that this is the case, that the denominator has the exclusion of Medicare and Medicaid. You've managed to go 14 minutes. I should commend you for this, without mentioning the word Chevron. But, you know, that's not only, I think, the primary basis of the North Broward opinion, but in light of that opinion, even though, you know, I might think your agreements are just entirely reasonable, and we're looking at this from a, you know, on a blank slate, isn't it difficult to overcome, I'll call it the Chevron presumption, you know, as applied in North Broward to this amendment? Your Honor, no. Because the Chevron presumption, and there is a presumption that one should defer to the administrative agency's interpretation if the statute is ambiguous. That's clear, and we don't oppose that contention of law at all. The point is that is Chevron's Step 2 analysis. Chevron's Step 1 analysis is you look first at the language of the statute, and if the language of the statute construed according to traditional tools of statutory construction, such as the canons of statutory construction, which, as I've said, all point in the direction of our interpretation, if the language is clear and if it addresses the point in controversy, which it does, because the word such revenues, such construed according to the canons of construction, specifically addresses the question here, then you are not to look at the agency. You are not to look at legislative history. You are to look at the language of the statute. And that is precisely what the Supreme Court has emphasized again in Lamey. So I don't think Chevron is problematic at all, Your Honor. I think it is quite clear, however. The question is, is the statute ambiguous? If the statute is ambiguous, then yes, the government wins, because you defer to their two reasonable statutory constructions and theirs is the one that controls. However, our point is that the language is not ambiguous. So you do not get to Chevron's Step 2. Kennedy. You have four minutes left, Your Honor. I think I reserve it for rebuttal, Your Honor. Thank you, Your Honor. May it please the Court, Anne Murphy for the Secretary, Mr. Thompson. Your Honor, I think that Ms. Marshall is absolutely right. The question is, is the statute ambiguous? And I think, Your Honor, your questions pointed out that, yes, it is ambiguous. And as you point out, the hospital's alternative reading of the statute gives, and the North Broward Court pointed this out, too, it gives no work for the concept of total of. And Ms. Marshall just stood up and told you that the words total of are in the statute to, quote, make clear that the other absurd construction is not right. Well, it seems to me that given it's incredibly important to this fraction what the phrase total of such net inpatient care revenues means, that the word total of should have more to do than make clear that an absurd construction is not correct. And it seems to me that the government's reading that total of just means all of them is a reasonable one. The definition of total in the Webster's Dictionary is when used as a noun means a product of addition or an entire quantity. Right. So, I mean, our position was simply that the total of is all of the net inpatient care revenues. And, you know, I agree that there's some ambiguity in the statutory text. But that being so, as, you know, as Your Honor pointed out, then we look to Chevron, we look to the purposes and policies, we look to the secretary's longstanding policy, and we see whether that's reasonable. And I think that the North Broward court did a really marvelous job going through and showing where the ambiguities lay, why the statute was ambiguous, and why the secretary's interpretation of it was reasonable. However it's pronounced, we'll call it the Lamy case. Lamy. What is your view on what, if any, effect it has on this case? I think it's a very interesting case. I think it's a ‑‑ excuse me. I should pick it up since I wrote my notes on this. I think it's not as closely on point as Ms. Marshall wishes it were, because I think what happened was in Lamy they amended the statute and the statute as amended was clear and unambiguous. It didn't have the textual ambiguities that our statute has. And when the courts of appeals went through, where they found the statute ambiguous not because the text itself was ambiguous, but because if you put the new statute up against the old statute, then you could read things into the new statute that made it look ambiguous. So at page 6 of the Lamy slip opinion that I sent in, the Supreme Court says, well, the real problem here is that ambiguity you have comes from comparing the new statute with the old one. It's not to do with the statutory text, whereas here that is manifestly not true because the statutory text itself gets us into all kinds of ambiguities. I also liked in the Lamy opinion this notion that a little bit of surplusage is not always a problem, since basically the hospital's argument is based really entirely on the notion that such particularizes in some way that it's surplusage. So that seemed important. But I do think it's a very interesting decision in terms of the way that the court analyzed the legislative history and the evolution of the statute. But, you know, the reason we put the legislative history hard into our case is not so much to show how to read the statute now, but because it's difficult to understand, and at least the 1986 Congress, when it first enacted it, told us exactly what should be in that denominator, told us how the fractions should be calculated. So at least at the end of the road, when you're in the server on step 2, you have a sense of what Congress really intended, which, after all, is the goal that we're all aiming for. If Your Honors have no further questions, I think that's pretty much what we have to say. Thank you. Thank you. Rebuttal? Your Honor, on the point of what construction renders the word total superfluous, if the statute were to take out its total of such, all of those words, the statute would read that is, okay, if the numerator does not exceed 30 percent of net inpatient care revenues. The interpretation that the government gives to this statute renders the entire phrase, it's total of such, irrelevant, redundant, not redundant, but completely superfluous, because clearly the statute would be explicit if it simply said 30 percent of net inpatient care revenues. We wouldn't be before you. And so I would submit that it is indeed the hospital's interpretation that gives effect to its total as well as of such. On the definition of total, it does not say percent of its total net inpatient care revenues. It says its total of such net inpatient care revenues. And the question is, I think the briefs have made it rather clear, is such there used, such has many definitions, as the government says. However, is it used in this statute in its pure referential sense, in which case it has no operative effect, or is it used in its particularizing sense, the sense that says these things, as they have been particularized earlier before, and net inpatient care revenues have been particularized as excluding any of the revenues attributable to Medicare and Medicaid. I would point out another canon of construction that points in the direction of our interpretation, and a canon that the government sought to rely on in its briefs, is that there is a tenet that Congress is assumed to use the same word in the same way, when it uses it more than once in the same statute. Here it's in the same sentence. Now, the first time it uses the word such, there's no question. Such is used in its particularizing, not its referential sense. It says in the parenthetical, excluding any of such revenues. It doesn't mean just excluding any of its revenues. It means its net inpatient care revenues. And the government and the hospital are in total agreement on this. The word such, the first time it is used in this statute, is used with its particularizing meaning. Our contention is that the second time it is used, according to an established tenet of statutory construction, it is again used in its particularizing definition, not its mere referential meaning. By applying that tenet, by applying the tenet that such and total of cannot be mere surplusage, by, as Lamy indicates is very important, striving, if possible, to construe a statute so that it is not ambiguous, so that you do not have to get into the pitfalls of looking at legislative history. That tenet also points in the direction of a clear interpretation that points to the denominator excluding Medicare and Medicaid revenues. And, Your Honor, I do just want to touch on the point that it is also, it also renders completely superfluously reference to Medicare, if you interpret the statute the way that the government says that it should be read. The government's rationales that they have come up with in their briefs, and this is a point that was not addressed by the North Broward Court. It may be that it was only brought up at oral argument and, therefore, it was not addressed. But since Medicare revenues are not from state and local government sources, the only possible meaning of having Medicare referred to in the exclusion is if the exclusion applies to the denominator as well as the numerator. In the numerator, since the numerator definitely only includes revenues that are for indigent care from state and local government sources, Medicare is by definition excluded. The rationales that have been proposed by the government simply don't hold water. The coinsurance payments that, yes, Medicaid may pay, coinsurance or premiums that are associated with Medicare, but these are still Medicaid payments. There may be situations of mistake where the Medicaid program, by mistake, pays for Medicaid, but still that is a payment by Medicaid, and that is what is received by the hospital. So those rationales have not successfully explained why Medicare is in there as a reference. So we now have not only Medicare as a reference, we have its total, we have such. All of this is surplusage if you accept the government's proposition of construction. And if you apply the simple canons, then it is a clear statutory meaning. That is what we argue for. I think my time is up. Thank you. Thank you. We thank both counsel. This case is submitted for decision. Being the last case on today's calendar, we stand in adjournment for the day. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Tashima, Clifton, Leighton